IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JOSEPH ANDREW LEHMAN                                                          PETITIONER
REG. #11218-002

V.                                    NO.  2:05CV00274 JWC

LINDA SANDERS, Warden,                                                        RESPONDENT
FCI, Forrest City, AR

**MEMORANDUM OPINION AND ORDER**

Joseph Andrew Lehman, an inmate in the Federal Correctional Institution in Forrest City, Arkansas, brings this 28 U.S.C. § 2241 petition for writ of habeas corpus challenging the policy of the Bureau of Prisons (BOP) regarding when a federal prisoner is eligible for transfer to a community corrections center (CCC) (docket entry #1).  Respondent has filed a response (docket entry #7), to which Petitioner replied (docket entry #10).  For the reasons that follow, the petition is GRANTED.[1]

Petitioner states that he is serving a forty-one month sentence of imprisonment imposed on March 5, 2004, by the United States District Court, Middle District of Alabama. He says he has been scheduled for transfer to a CCC (commonly referred to as a halfway house) on November 7, 2006, which will give him 142 days of CCC time.  He says that he has asked to spend at least the last six months of his sentence in a CCC, but that the BOP denied his request, citing its February 2005 policy which limits CCC placement to the last ten percent of an inmate's sentence, regardless of individual needs and circumstances. He argues that the BOP's interpretation of the applicable statutes is erroneous and contrary to Eighth Circuit law and that application of its current policy to him violates the

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge (docket entry #8).

Ex Post Facto Clause of the United States Constitution. He asks the Court to declare the BOP policy invalid and to direct the BOP to transfer him to a CCC for at least the final six months of his sentence.

In <u>Elwood v. Jeter</u>, 386 F.3d 842, 845-47 (8th Cir. 2004), the Eighth Circuit Court of Appeals invalidated a December 2002 BOP policy regarding CCC designation and held that the BOP has the discretion to transfer an inmate to a CCC at any time, but only the duty to consider a transfer to a CCC in the last six months of a sentence. <u>See</u> 18 U.S.C. § 3624(c). In response to <u>Elwood</u> and other similar decisions, the BOP created the regulations challenged here, which became effective February 14, 2005. These regulations provide that, as a "categorical exercise of discretion," the BOP will designate inmates for CCC placement "only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. §§ 570.20, 570.21 (2005). Recently, in <u>Fults v. Sanders</u>, No. 05-3490, 2006 WL 870745 (8th Cir. Apr. 6, 2006), the Eighth Circuit Court of Appeals declared this policy invalid as conflicting with 18 U.S.C. § 3621(b), which lays out certain factors that must be considered by the BOP in making inmate placement or transfer determinations. <u>See</u> <u>id.</u> ("The Bureau may designate any available penal or correctional facility ... that the Bureau determines to be appropriate and suitable, considering – (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any [relevant] statement by the court that imposed the sentence ... ; and (5) any pertinent policy statements issued by the Sentencing Commission[.]").

According to the Eighth Circuit, "[t]hree of these factors – the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence – cannot be fully considered without evaluating inmates on a case-by-case basis." Fults, supra at *3. The BOP policy "removed the opportunity for the BOP to exercise discretion for all inmates not serving the last ten percent of their sentences." Id. at *4. Because § 3621(b) requires that discretion be exercised on an individual basis, the Eighth Circuit found that the policy at issue was invalid. Id.; see also Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 244 (3d Cir. 2005) (BOP regulation is invalid because the BOP "may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations").

Here, Respondent argues that the February 2005 policy is valid and consistent with federal statute. That argument is foreclosed by Fults. She also says that no final determination has yet been made regarding a CCC recommendation and that the petition should be dismissed as premature.

Article III of the Constitution requires that a "case or controversy" exist for standing to bring an action in federal court. U.S. Const. art. III, § 2, cl. 1. For a case or controversy to exist, a plaintiff must suffer an "injury in fact" which is "fairly traceable" to the challenged action of the defendant, and it is "likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

BOP policy provides that, "[n]ormally 11 to 13 months before each inmate's probable release date, the unit team shall decide whether to refer an inmate to a Community

3

Corrections program." BOP P.S. 7310.04, p.12 (available at www.bop.gov). Respondent has submitted the declaration of James D. Crook, a supervisory attorney for the BOP, along with a computer-generated inmate data sheet. (See Ex. A to docket entry #7.) According to the data sheet, Petitioner's projected release date is March 29, 2007; his "pre-release preparation date" is November 7, 2006; and his "six month/10% date" is left blank. The data sheet is dated December 19, 2005, obviously more than eleven to thirteen months prior to his projected release date in March 2007. Respondent does not dispute Petitioner's representation that the pre-release preparation date is the same as his CCC placement date, and other courts have characterized the pre-release preparation date as corresponding to the date an inmate is eligible for transfer to a CCC. Berretta v. Federal Bureau of Prisons, No. Civ. A 04-5143, 2005 WL 1899336, at *1 (D.N.J. Aug. 9, 2005) (stating that BOP informed inmate his pre-release preparation date was the date he would be considered for transfer to a CCC); see also Krigsman v. Federal Bureau of Prisons, No. Civ. A 05-2673, 2006 WL 755983, at *1 (D.N.J. Mar. 17, 2006); Cambridge v. Hogsten, No. 3:CV-06-0027, 2006 WL 335786, at *1-2 (M.D. Pa. Feb. 14, 2006).

Clearly, by assigning a pre-release preparation date, the BOP already has evaluated or considered Petitioner's pre-release custody. Even though the date may be tentative, it still has been computed and communicated to Petitioner. Furthermore, the November 2006 date would give him about four months in a CCC, which is about ten percent of his sentence. It thus appears that the BOP computed the pre-release preparation date pursuant to the February 2005 policy's ten percent limitation. Additionally, Petitioner is now within eleven months of his anticipated release date. Under these circumstances, the Court rejects Respondent's suggestion that this matter is not ripe for consideration.

Respondent also asserts that Petitioner has been convicted of escaping from a federal prison camp in Alabama. While this would certainly be a highly relevant factor to consider in determining whether and when to transfer Petitioner to a less secure facility, nothing in the record indicates that this was the basis for Petitioner's CCC eligibility date, rather than mechanical application of the ten percent limitation. See BOP P.S. 7310.04, ¶ 10(i) (CCC participation is not "ordinarily" appropriate for inmates who pose a significant threat to the community, such as inmates with a history of escape; although "a number of factors" must be considered, the "key consideration is public safety when assessing the inmate's proclivity for violence or escape against their placement needs").

While Elwood and Fults mandate relief for Petitioner,[2] nothing in these decisions or the applicable statutes entitles any prisoner to six months of placement in a CCC. See Woodall, 432 F.3d at 251 ("[T]hat the BOP may assign a prisoner to a CCC does not mean that it must."); Elwood, 386 F.3d at 847 ("We emphasize ... that 18 U.S.C. § 3624(c) does not require placement in a CCC."). Under Elwood, the BOP is simply required to formulate a plan of pre-release conditions, which *may* include CCC placement, and to place an inmate in pre-release conditions, which *may* include a CCC, for "a reasonable part of the last ten percent of [his] term;" however, neither of these obligations extends beyond the last six months of the prisoner's sentence. Id. Fults further defines the BOP's duty during that six-month period, requiring the BOP to consider CCC placement in good faith utilizing the statutory factors, without categorically limiting the possibility of CCC placement to the last

---

[2] Because Petitioner is entitled to relief as set forth above, it is not necessary to address his ex post facto argument.

ten percent of an inmate's sentence. Nothing in the decisions mandates that the BOP designate any inmate for CCC placement at any time, much less for the full six-month period.

THEREFORE, Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus is GRANTED and Respondent is directed, within twenty days of this order: (a) to formulate a pre-release plan that will place Petitioner in conditions affording him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months, and (b) as part of the pre-release plan, to consider, in good faith, transferring Petitioner to a CCC for up to the last six months of his sentence in accordance with the factors set forth in 18 U.S.C. § 3621(b), as well as any other appropriate factors, but without reference to the BOP's December 2002 and February 2005 policies.

Petitioner's motion for ruling (docket entry #11) is granted.

IT IS SO ORDERED this 17th day of April, 2006.

_____
UNITED STATES MAGISTRATE JUDGE